UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARK SCHREIBER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAILORMEN INC.; and DOES 1 to 25,<br><br>Defendants. | Case No.<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

### NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff MARK SCHREIBER ("Plaintiff"), on behalf of himself and all others similarly situated, asserts as follows:

### INTRODUCTION

1. Mark Schreiber, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants Sailormen, Inc. and Does 1 to 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least one hundred and fifty (150) Popeyes restaurants in the states of Georgia and Florida. Mr. Schreiber's claims arise from his own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants'

facilities"), and from site investigations at seven (7) of Defendants' facilities also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Mr. Schreiber seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…
>
> 42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Mr. Schreiber's investigators, he believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 19-26 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Mr. Schreiber brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify its existing policies, practices and/or procedures to ensure that its facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Mr. Schreiber seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or his own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Mark Schreiber is, and at all times relevant hereto was, a resident of Savannah, Georgia. Plaintiff is a person with a mobility disability. In 2004, Mr. Schreiber suffered a spinal cord injury during a surfing accident. Mr. Schreiber was paralyzed from the injuries sustained to his T11 vertebrae.

9. Mr. Schreiber is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Sailormen, Inc. is, and at all relevant times was, a Florida corporation, doing business in the state of Georgia as the owner, lessee, and/or operator of dozens of Popeyes restaurants in this state.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Mr. Schreiber will amend this Complaint to assert their true names and capacities when known. He is informed and believes, and thereon asserts, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences asserted in this Complaint.

12. Mr. Schreiber asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things asserted in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

13. Mr. Schreiber is further informed and believes, and based thereon asserts that Defendants collectively own, lease, and/or operate approximately one hundred and fifty (150) Popeyes restaurants in the states of Georgia and Florida, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Mr. Schreiber Has Been Denied Full and Equal Access to Defendants' Facilities**

15. Plaintiff visited Defendants' facilities located at 2514 Bull Street Savannah, Georgia 31401 in June 2024, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle and navigating the facilities due to the unlawful sloping conditions in Defendants' purportedly accessible parking areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

16. Despite the inaccessible conditions present at Defendants' facilities, Plaintiff plans to return to Defendants' facilities. Plaintiff visits his chiropractor every five days, or at least once a week, and drives past Defendants' Bull Street location to get there. During his visit in June, 2024, Mr. Schreiber was on his way back from the chiropractor and stopped in there to get a spicy chicken sandwich and fries—his regular order at Popeyes. Mr. Schreiber often stops at Defendants' restaurant to pick up food on his way home from the chiropractor, or on his way to or from the beach. Because of the convenience of Defendants location, Mr. Schreiber intends to frequent Defendants' facility in the future. Furthermore, he intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and he will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

## Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

19. Plaintiff is informed and believes, and based thereon asserts that, as a Popeyes franchisee pursuant to franchise agreements, Defendants utilize a manual (the "Manual") issued by the franchisor. Exemplars of the franchise agreements are publicly available, and it is Plaintiff's belief that the actual signed franchise agreements between Defendants and Popeyes are within the possession and control of the Defendants.

20. Pursuant to the franchise agreements, Defendants are required to follow all of the agreement's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting management, administration, and maintenance policies, practices, and procedures related to exterior maintenance, and in keeping the business in compliance "with all local, state and federal laws and regulations applicable to the operation of your Franchised Restaurant, including . . . the Americans with Disabilities Act . . .". *See* Franchise Disclose Document ("FDD") at 10. Within this Manual, the franchisor provides an "Index of Brand Standards and Procedures Standard Operating Procedures Content Inventory" contains a "Parking Lot and Curbs SOP." FDD at 298. Additionally, "[the franchisor] assumes no liability or responsibility for . . . compliance with the Americans With Disabilities Act . . . It is Developer's sole responsibility to obtain satisfactory evidence and/or assurances that the approved Site (and any structures thereon) is free from environmental contamination and in compliance with the requirements of the ADA. FDD at 137.

21. Prior to "Franchise Approval" required by Popeyes, "Franchisee has the duty and obligation (i) to investigate whether or not the Franchised Restaurant is in compliance with all local, state and federal laws, codes, rules and regulations now in existence or hereafter promulgated, including without limitation, the Americans with Disabilities Act of 1990 and applicable building and fire codes (collectively, "Laws"), and (ii) to make any required renovations, alterations or improvements to comply with such Laws, all at Franchisee's own cost and expense and in a good, professional and workmanlike manner, whether or not there are any existing violations or conditions which do not comply with Laws on the date hereof." FDD at 244.

22. Additionally, Plaintiff is informed and believes, and based thereon alleges, that the Popeyes's franchise agreements require periodic remodeling, redecoration, structural changes, and modifications to the restaurants every ten years and "at the time of submittal of the construction plans and specifications (the "Plans") of the Remodel Work to Lessor for approval, a certificate, on a form to be provided by Lessor, from an architect, licensed in the State where the Premises are located ("Architect"), certifying that the Plans comply with (i) the requirements of Title III of the Americans With Disabilities Act of 1990 ("ADA") (ii) the Americans With Disabilities Act Accessibility Guidelines 1991 ("ADAAG") which is a part of the ADA; (iii) the 2010 ADA Standards; and (iv) all state and local building codes including any disabilities related statutes or codes (collectively, the "Codes") in the applicable jurisdiction where the Premises are located[.]" FDD at 293.

23. The franchisor also requires the franchisee to participate in an "initial training program" to obtain franchise approval. "If the Franchised Restaurant is not your first Popeyes Restaurant (i.e. you already own and operate one or more Popeyes Restaurants as of the date of this disclosure document), then at least 4 of your designated management employees at the

Franchised Restaurant (we will determine the exact number) must complete this training program. In either case, one of the designated management employees must include the Managing Director for the Franchised Restaurant as further described in Item 15. [Franchise Agreement, Section 8.01 and 8.02.]" FDD at 49.

24. The franchisor maintains control over the franchisee and its training. "For the duration of the Franchise Agreement, we will make the Manual available to you electronically via the Internet or other electronic format. The Popeyes Brand Standards and Procedures contained in the Manual contain the standards, specifications, standard operating procedures and techniques of the System." FDD at 49. The franchisor "will make available to you additional training as we, in our discretion, choose to conduct." FDD at 49.

25. As part of the franchisor's approval, the franchisor requires the franchisee to designate a "General Manager." The "PTP consists of training modules for restaurant general managers, assistant managers and shift managers. Before a manager can achieve Popeyes Certified Manager status, the manager must first complete (to our satisfaction) each module for his/her applicable management role at the Franchised Restaurant. If any Popeyes Certified Manager does not do so, such individual will no longer qualify as a "Popeyes Certified Manager". To maintain certification as a Popeyes Certified Manager, each PTP participant must complete all available modules of PTP applicable to his/her management role at the Franchised Restaurant within 6 months of being hired in a management position at the Franchised Restaurant. We reserve the right to amend or modify the existing PTP modules at any time, and we also reserve the right to roll out to the System new or additional PTP modules. We in our sole discretion will determine whether the completion of a particular module is required for a manager to achieve Popeyes Certified Manager status." FDD at 52. This General Manager is charged with overseeing operations of

Defendants' restaurants for compliance with Popeyes's policies through regular and complete inspections of Defendants' restaurants.

26. According to a federal court filing in December 2022, Defendants employ "Area Managers"—also known as "above restaurant leader"—that is "responsible for and oversaw the operations of multiple Popeyes restaurant locations." As an Area Manager, the "main priority still was to manage and oversee the restaurants in her area" and "Sailormen expected area managers such as Plaintiff to run their restaurants and meet company metrics." The Area Manager would, in turn, report to the "Regional Manager" who provided directives to the Area Manager.

27. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

28. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, and/or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

   a. 2514 Bull Street, Savannah, Georgia
      i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10%.
   b. 2060 E Victory Drive, Savannah, Georgia
      i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10%.
   c. 10132 San Jose Boulevard, Jacksonville, Florida

      i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[1].

   d. 2337 W Green Street, Tampa, Florida

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

   e. 3291 W Broward Boulevard, Lauderhill, Florida

      i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%.

   f. 116 Merritt Island Causeway, Merritt Island, Florida

      i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10%.

   g. 430 Blanding Boulevard, Orange Park, Florida

      i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

29. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices, and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

30. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

31. Mr. Schreiber's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

32. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

33. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any Sailormen, Inc. and DOES 1 to 25 locations.

34. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

35. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

36. <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

37. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly,

adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

38. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

**[42 U.S.C. §§ 12101, *et seq.*]**

**(Against all Defendants)**

39. Plaintiff restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

40. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, he is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

41. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

42. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

43. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

44. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that after were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

45. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

46. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing policies, practices and/or procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

47. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

48. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

49. Remediation of Defendants' facilities is readily achievable and can be accomplished and carried out without significant difficulty or expense due to the straightforward nature of the necessary modifications. The necessary modifications are low cost and Defendants have the financial resources to complete them.

50. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use

wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  August 15, 2024                                    Respectfully Submitted,

*/s/ John T. Stembridge*
John T. Stembridge
Georgia Bar No. 678605
**STEMBRIDGE TAYLOR LLC**
4840 Roswell Road, Suite 300
Atlanta, GA 30342
Phone: 678-270-5458

john@stembridgetaylor.com

Jordan T. Porter
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com

Benjamin J. Sweet
**NYE, STIRLING, HALE, MILLER & SWEET, LLP**
101 Pennsylvania Boulevard, Suite 2
Pittsburgh, PA 15228
Phone: 412-857-5352
ben@nshmlaw.com

*Attorneys for Plaintiff and the Class*